HYDE, Appellant, v. M., D. & P. RY. CO. et al., Respondents.

(136 N. W. 92.)

1. **Eminent Domain—Damages—Allegations of Complaint—Review.**
Where demurrer to a complaint for damages for "damaging" property, based upon location, maintenance and operation of a railroad line and closing of streets not adjacent to plaintiff's lots, is under consideration on appeal from an order sustaining demurrer, all allegations therein not pleaded as grounds for recovery of money judgment, but which might pertain to equitable relief, are disregarded.

2. **Eminent Domain—Damages Based on Common Law—Inherent Right of Sovereignty—"Taking"—"Damaging" Property—Constitutional Provision.**
Appellant's right to damages to his property from location, maintenance and operation of defendant's railroad and the closing of non-adjacent streets is not based upon Sec. 12. Art. 6 of the Constitution, but upon the common law. Such right, whether the injury flows from a "taking" or a "damaging" of property, is one not coming from the Constitution; the power of eminent domain being inherent in sovereignty and existing before the Constitution, federal or state, was adopted; such provisions merely preventing legislatures from invading the right, and granting the right, under our Constitution, of preventing the "taking" or "damaging" until recompense is made.

3. **Eminent Domain — Negligence — Compensation for Unavoidable Injury—Allegations of Complaint as to Negligence.**
Exercise of power of eminent domain does not absolve the person or corporation exercising it from liability for negligence either in exercise of the power or in carrying on of enterprise after such power is exercised; and the damages, to be recompensed for are only those flowing from injuries unavoidable even by use of reasonable care, and are ordinarily only such as could be anticipated by a jury in the trial of an action brought before the "damage" had occurred. **Held,** there being no allegation of negligence in the complaint for damages at bar, no question of negligence is before us,

and it is presumed that defendants acted with due care concerning the matters complained of.

4. **Eminent Domain—Damages from Nuisance.**

Laws pertaining to damages from private nuisances are unaffected by question of eminent domain; the right to take or damage property under eminent domain only makes that lawful which otherwise would be unlawful, leaving the holder of such right, in so far as taking or damaging of property may infringe upon the superior rights of the owners, liable to compensate for damages flowing from the injury sustained.

5. **Railroads Not Ordinarily Nuisances—Negligent Operation of.**

Ordinarily a properly operated railroad is not a nuisance: it can only become a private nuisance when improperly or negligently operated, or when, though properly operated, yet owing to its peculiar location it infringes upon some private right as distinguished from public rights in general.

6. **Eminent Domain—"Damaged" in Constitutional Provision.**

The word "damaged" in Sec. 13, Art. 6, of our Constitution in connection with taking or damaging property without compensation, means legal damages; and one making a reasonable use of his property not infringing upon superior rights of others cannot be holden for damages suffered by another flowing from such use. The power of eminent domain does not lessen or increase the rights or liabilities of the private exerciser of that power as regards damages suffered by another by exercise of the power from what they would be if property were taken or damaged without exercise of such power, except that, for taking or damaging, payment may be required before the taking or damaging.

7. **Railroads—Nuisance in Operation—Damages—Allegations of Complaint.**

Without an allegation of negligence of defendants in management of trains and location and operation of their railroad, it will not be presumed, in an action for damages to plaintiff's property by location, maintenance and operation, etc., of their road, it will not be presumed that such establishment and operation constituted an unreasonable use of defendants' property and rights, amounting to a nuisance, even though the complaint alleges that plaintiff suffered damages, as such damages may result from reasonable use of defendants' property and rights.

8. **Railroad—Eminent Domain—Closing Highway—Damages—Complaint.**

While a railway company has an implied right under eminent domain, to cross a public highway and thus impose a further public use upon that part of the highway, no such implied right to vacate and close part of a highway on the

pretext that it is needed for railway purposes exists; such
closing would be punishable as a public nuisance; we must
therefore presume, in absence from the complaint of an alle-
gation to the contrary, that defendants did commit a crim-
inal offense, and that the parts of the street closed had been
vacated by the municipality.

9.   **Railroads—Closing of Streets—Eminent Domain, Rightful or
Wrongful Exercise of Power—Measure of Damages**
It is immaterial, in determining the actionable nature of
damage flowing from exercise of right of eminent domain,
whether the damage was inflicted by closing of streets by
city at defendants' request, or whether by the city of itself;
and the damages are such only as the city would be liable
for upon their vacation, if vacated by proper action of the
city.

10.   **Highways—Private Rights to Use of—Rights of Public.**
One, whether owner of land or not, whether citizen or
stranger, has a right in common with the public to travel all
public highways; which right is disconnected from owner-
ship of land and is not a private property in highways.

11.   **Highways—Right to Use of, as Owner of Land—"Taking or
Damaging" Property.**
One, as owner of land, has a right to access to every part
of the land abutting upon a highway, a right resting upon
ownership of and connected with and appurtenant to the
subject of property; it is therefore a property right, special
and distinct from public right, and pertains as well to parts
of the highways beyond and not abutting on his property,
to afford him reasonable facilities for connection with those
highways in which he has no special rights.   But any in-
terference with a highway beyond the point where one's
special rights end is not a "taking or damaging" of prop-
erty within the rule of damages under Constitution, Sec.
13, Art. 6;   and there being no allegation in plaintiff's com-
plaint that his property was taken or any easement or ap-
purtenant thereto interfered with, or that plaintiff had suf-
fered any damages or injury not common to all the residents
of that part of the city, under no view of the facts as alleged
is a judgment in his favor authorized.

Corson, J., concurring specially.
Haney, J., dissenting.

(Opinion filed, May 7, 1912.)

Appeal from Circuit Court, Brown County.   Hon. FRANK
McNULTY, Judge.

Action by Charles L. Hyde against the Minnesota, Dakota &
Pacific Railway Company and another, for damages for locating,

maintaining and operating, etc:, a railroad in proximity to plaintiff's lots. From a judgment of dismissal entered upon sustaining defendants' objection to introduction of evidence under the complaint as not stating a cause of action, on the trial, plaintiff appeals; but the case was here presented by counsel and treated by the court as though on appeal from an order sustaining a demurrer to complaint. Affirmed.

*Taubman & Williamson,* for Appellant.

The true rule is that a person is entitled to recover for damages occasioned to his property by public improvements, when the damages cover any loss or injury which may be properly taken into consideration in estimating damages to the balance of a tract when a part is taken. Omaha Horse R. R. Co. v. Cable Tramway Co., 32 Fed. 727. Or:

When the damages embrace any depreciation caused by the construction and operation of works for public use, no matter how occasioned. City of Omaha v. Kramer, (Neb.) 41 N. W. 295; Searle v. City of Lead, 10 S. D. 312.

"If the constitutional or statutory provisions provide for compensation where property has been damaged, injured or destroyed by the exercise of eminent domain, consequential damages are recoverable." 15 Cyc. 655; Hyde v. Fall River, reported in 2 L. R. A., new series, 269; Smith v. St. P. M. & M. Ry. Co., 81 Pac. 840; B. & P. R. Co. v. First Baptist Church, (U. S.) 27 L. Ed. 739; Louisville & N. T. Co. v. Lellyett, 1 L. R. A. (U. S.) 49 and note; Cogswell v. N. Y. & N. R. Co., 103 N. Y. 10.

In the case of Lake Erie & Western R. R. Co. v. Scott, (Ill.) 8 L. R. A. 330; McElroy v. Kansas City, 21 Fed. 257.

The rule is well stated by the supreme court of the United States in the case of Shepard v. B. & O. R. Co., 130 U. S. 426.

We cite: Smith v. St. P. M. & M. R. Co., 81 Pac. 840; G. H. & W. R. Co. v. Hall, (Tex.) L. R. A. 298.

In other words, the defendants stand before the court admitting that the construction and operation of their line of railway, switch yards and depot grounds have damaged the plaintiff in the sum of fifteen thousand dollars.

*A. W. Campbell,* for Respondents.

The rule of law is, as we understand it, that under a constitution providing that no private property shall be taken or damaged for public use without just compensation, a property owner may not recover damages against a railroad for excavating through or obstructing cross streets which are not his property and which he uses in common with the general public, although to a greater extent than other members of the public, but which are not adjacent to such property. And further, under the above constitutional provision, a property owner cannot recover damages for the ringing of bells, sounding of whistles, rumbling of trains and other usual noises, and the emission of smoke, gases, fumes and odors which are necessarily incident to the proper operation of the road. Smith v. St. P. M. & M. Ry. Co., (Wash.) 81 Pac. 840; Cram v. Laconia, (N. H.) 57 L. R. A. 282; Davis v. Hampshire County, (Mass.) 11 L. R. A. 750; Buhl v. Fort Street Union Depot Co., (Mich.) 57 N. W. 829; E. St. Louis v. O'Flynn, 119 Ill. 204, 10 N. E. 395; McGee's Appeal, 114 Pa. St. 447, 8 Atl. 257; Stanwood v. City of Malden, 157 Mass. 17, 31 N. E. 702; Glasgow v. St. Louis, 107 Mo. 204, 17 S. W. 743; Aldrich v. Metropolitan, etc., 195 Ill. 456, 63 N. E. 155, 57 L. R. A. 237; Chicago v. Union Stock Yards Transit Co., 164 Ill. 224, 45 N. E. 430, 35 L. R. A. 281; Illinois Cent. R. R. Co. v. Trustees of Schools, etc., 72 N. E. 39; Bennett v. Long Island R. R. Co., (N. Y.) 74 N. E. 418; Penn. R. Co. v. Marchant, 119 Pa. 541, 13 Atl. 690, 4 Am. St. Reports, 659; Penn. Ry Co. v. Lippincott, 116 Pa. 472, 9 Atl. 871, 2 Am. St. Reports, 618; Austin v. Augusta, etc., 108 Ga., 671, 34 S. E. 452, 47 L. R. A. 755; Vandorvere v. Kansas City, 107 Mo. 83, 17 S. W. 695, 28 Am. St. Reports, 396; Brown v. Board of Supervisors, 124 Cal. 274, 57 Pac. 82; Gilbert v. Greely, etc., Co., 13 Colo. 501, 22 Pac. 814; Morgan v. Des Moines & St. L. Ry., (Iowa) 21 N. W. 96; Rochette v. C. M. & St. P. Ry. Co., (Minn.) 20 N. W. 140; Carroll v. Wis. Cent. R R. Co., 41 N. W. 661; Presbrey v. Old Colony & N. R. R. Co., 103 Mass. 6; Rude v. St. Louis, 93 Mo. 408; 6 S. W. 257; Heller v. Atchinson, T. & S. F. R. Co., 28 Kan. 625; Dantzer v. Indianapolis Union R. Co., 141 Ind. 604; 34 L. R. A.

769, 39 N. E. 223; Clute v. N. Yakima & V. Ry. Co., (Wash.) 114 Pac. 513; Church v. Oregon Short Line R. Co., (Utah) 103 Pac. 243.

Injuries occasioned to a person through the prudent operation of railroads from noise, vibrations, smoke, cinders and the like, when suffered by him in common with other members of the community, though perhaps in greater degree, and affecting his personal convenience and comfort rather than the corpus of his property, or rights thereto appurtenant, although lessening its market value, do not entitle him to compensation under consitutional provisions that private property shall not be taken or damaged for public use without compensation. Smith v. St. Paul, etc., Ry. Co., 81 Pac. 840, 109 Am. St. Repts. 889; Campbell v. Metropolitan St. R. R. Co., 82 Ga. 320, 9 S. E. 1078; Austin v. Augusta T. Ry. Co., 108 Ga. 671, 47 L. R. A. 755; Aldrich v. Metropolitan, etc., Ry. Co., 195 Ill. 456, 63 N. E. 155; Church v. Oregon Short Line R. R. Co., (Utah) 103 Pac. 243; Ill. Central Ry. Co. v. Trustees of School, 212 Ill. 406, 72 N. E. 39; New Orleans Ele. R. R. Co. v. Barton, 43 La. Ann. 171, 9 So. 19; Carroll v. Wis. Cent. Ry. Co., 41 N. W. 661; Penn. Ry. Co. v. Lippincott, 116 Pa. St. 472, 2 Am. St. Repts. 618, 9 Atl. 871; Penn. R. R. Co. v. Marchant, 119 Pa. St. 541, 4 Am. St. Repts. 659, 13 Atl. 690; Jones v. Erie, etc., R. R. Co., 151 Pa. St. 30, 31 Am. St. Repts. 722 25 Atl. 134.

To entitle a property owner to compensation for damages caused by a public improvement, he must sustain special injury over and above that suffered by the community in general. And it is not enough that the injury be greater in degree than that suffered by the public generally; it must be greater in kind. Metropolitan Ele. R. R. Co. v. Goll, 100 Ill. App. 323; Van DeVere v. Kansas City, 107 Mo. 83, 28 Am. St. Repts. 396; Gates v. Kansas City Ry. Co., 111 Mo. 28, 19 S. W. 957.

"The damage must be to the property or its appurtenance, or it must affect some right or interest which the owner enjoys in connection with the property not shared or enjoyed by the public generally. The damage must differ in kind, not merely in degree."

Gilbert v. Greely, etc., Ry. Co., 13 Colo. 501, 22 Pac. 814; Ponischill v. Hoquiam Sash & Door Co., 41 Wash. 313, 83 Pac. 316; Heller v. Atchinson T. S. F. Ry. Co., 28 Kan. 625; Nichols v. Richmond, 162 Mass. 170, 38 N. E. 501.

A railroad constructed and operated by authority of law is not presumably a nuisance. Smith v. St. Paul, M. & M. Ry. Co., 81 Pac. 840; Church v. Oregon Short Line Co., 103 Pac. 243.

Where an action was tried in the lower court as for damages to property without just compensation, a judgment for the plaintiff cannot be sustained on review, on the theory that the acts complained of constituted a private nuisance. Church v. Oregon Short Line Co., 103 Pac. 243.

WHITING, J. This action was brought to recover damages which plaintiff alleged he had suffered through the acts of defendants. Upon the trial before the circuit court and jury, defendants objected to the introduction of any evidence under the complaint, basing their objection upon the ground that such complaint did not state facts constituting a cause of action. The objection was sustained, and verdict for defendants directed. Judgment having been rendered upon such verdict, plaintiff appealed to this court, and in his brief states: "There is but one question in this case. Plaintiff contends that he is entitled to recover for incidental and consequential damages. Defendant resists this contention, and claims that, inasmuch as the defendant constructed and are operating their line of railway upon their own land, the plaintiff, even though damaged, cannot recover." The cause has been presented to this court, both by the briefs and oral arguments, as though it were an appeal from an order sustaining a demurrer to the complaint when such demurrer had been interposed before answer, and it will be so treated by this court.

The facts which such demurrer would admit are, in substance, as follows: Plaintiff is the owner of numerous lots in a row of blocks running east and west within, but at the extreme southern end of, the city of Aberdeen. There is no highway on the south side of such blocks, but there is a street along the north side thereof, and there are streets between such blocks,

which last-mentioned streets originally extended, without inter-
ruption, to the north through said city. The defendants acquired
the row of blocks next north of the row where plaintiff's prop-
erty is situate, and, entering said city from the southeast with their
right of way, defendants entered upon such row of blocks ac-
quired by them, and used the same for a railroad right of way
running westerly across the south end of such city. Defendants
used no part of the street adjoining plaintiff's property on the
north, but did cross all the streets running north from plaintiff's
property, and ·closed two of such streets where the same crossed
their right of way. There were at least two streets east of and
parallel to, and two streets west of and parallel to, those closed,
which were not closed by such right of way, and the street run-
ning east and west along the north side of plaintiff's property con-
nected with all of said open streets. It does not appear that there
are any structures upon plaintiff's property. The defendants have
constructed a line of railroad, depot grounds, coal bins, water
tanks, depot, and engine house upon the row of blocks owned by
them; their exact location as relates to the property of plaintiff
not appearing.

[1] This is not an action asking equitable relief by way of
injunction; and, while the plaintiff, in one paragraph of his com-
plaint, has set forth many sources of alleged injury, the only al-
legations of said complaint upon which he predicates his claim for
money damages are those found in paragraph "XI" of such com-
plaint. We must therefore disregard all such matters as are not
pleaded as grounds for the recovery of the judgment asked for.
Paragraph "XI" of the complaint reads as follows: "That the
defendants are now operating said system of railway and running
trains along the tracks of the same, and are using all of the space
between Eleventh and Twelfth avenues as aforesaid as switch-
yards and depot grounds; that First street and Second street
have been closed to travel by the defendants, and no crossings are
maintained over and across the switchyards and depot grounds of
the defendants at First and Second streets, and that by reason of
the location, construction, operation, and maintenance by said rail-
way company of said line of railway, and the closing and crossing

of said streets, as aforesaid, and the continuous operation of trains over and across the streets aforesaid, north and east of the property of the plaintiff, and by reason of the smoke, dust, noise, and trembling of the earth occasioned by the operation of the trains of the defendants, and the location of the depot and roundhouse across or over the streets leading from plaintiff's property to the city proper, the plaintiff has been damaged in the sum of fifteen thousand ($15,000) dollars. Wherefore, plaintiff demands judgment against the defendants for the sum of fifteen thousand ($15,-000) dollars, besides the costs and disbursements of this action." It will thus be seen that plaintiff's claim for damages is based upon the location, construction, maintenance, and operation of the line of road and switchwards, such operation causing smoke, dust, noise and trembling of the earth, and upon the closing of the streets to the north of, but not adjacent to, plaintiff's property.

[2] We shall not attempt to harmonize the views advanced in the almost numberless decisions wherein the questions presented by this appeal have been discussed. All that we shall strive to do is to call attention to what we deem certain basic propositions which seem to have been frequently rejected or overlooked, and then determine the principles that should control under the facts presented by the complaint. From the reading of appellant's brief, it is apparent that he bases his right of recovery upon the use of the words "or damaged" in section 13, art. 6, of the Constitution of this state, which section reads: "Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained and before possession is taken. * * *" From the reading of many of the decisions, it would seem that the courts have frequently held that the right of action to recover damages rested upon constitutional provisions similar to the above. Such holdings are certainly erroneous. We would cite the reader hereof to the excellent discussion found in a case from a state having no constitutional provision whatsoever, and would like to quote the opinion in full if space permitted. Staton v. Norfolk & Carolina R. Co., 111 N. C. 278, 16 S. E. 181, 17 L. R. A. 838. See, also, notes in 17 L. R. A. 838-842.

The history of the right to recover for the taking or damaging property under the power of eminent domain like the history of such power itself, extends back long prior to our Constitutions, either federal or state. The power of eminent domain is an inherent right vested in sovereignty as a necessary attribute thereof, but long before the founding of the American Colonies it had become thoroughly established, as part of the English law, that it was unlawful to take the property of an individual for even a public use without making due compensation therefor. The taking of private property without compensation must have been especially repugnant to a people such as those who founded our present government—the very corner stone of which is the equality of men before the law. We find that some of the courts have held that, even where there was no constitutional inhibition, the Legislature had no power to take private property for public use without just compensation. See cases cited in the Staton Case, supra. The framers of the federal Constitution did not even think it necessary to place therein any guaranty of this right to recover damages, thus showing that this right was fully recognized. The guaranty will be found in the fifth amendment. Very few of the Colonies had any such guaranty in their fundamental laws, and most of them had none until long after statehood, while one, North Carolina, has never seen fit to place such a guaranty in her Constitution. Sooner or later the sovereign authority, the people, protected themselves from any attempt upon the part of their Legislatures to deprive them of their right to recompense by enacting the several constitutional provisions now in force. In the early days these constitutional provisions only guaranteed reimbursement in case of a "taking" of property, and the result was that some of the courts, construing the word "property" in its narrow sense as the "thing" owned, rather than giving to it the broader and truer meaning of, "the exclusive right to possess, enjoy, and dispose of, a thing" (Webster's New International Dictionary), held that there was no provision against the mere "damaging" of the thing which was the subject of property, but that one could recover only when there was an actual "taking of the thing." See Thompson v. Androscoggin River

Improvement Co., 54 N. H. 545, and case of Eaton v. Railroad Co., 51 N. H. 504, 12 Am. Rep. 147, wherein, as well as in the Staton Case, supra, clear discussions of the results flowing from the misconstruction of the word "property" are found.

The cases holding to this narrow construction of the word "property," and holding that no recovery could be had under a constitutional provision guaranteeing recompense only where there had been a "taking" of the thing, were clearly in error, both in giving too narrow a meaning to the word "property" and also in holding that the right of recovery rested upon the Constitution rather than upon the common law or.upon an inherent right superior to any legislative enactment. The result of these decisions was that many of the states amended their Constitutions by inserting therein the words "or damaged" or equivalent words, making them read, in effect, the same as the provision of our Constitution above quoted. The fact, however, remains that the right to recover damages, whether the injury flows from a "taking" or a "damaging" of the property, is a right not coming from the Constitution; the only effects of the constitutional provisions being to prevent the Legislatures from depriving the people of such right, and granting the right, under Constitutions such as ours, of preventing the "taking" or "damaging" until the recompense is made. We think there can be no question but that the including of the words "or damaged" does not broaden the effect of the constitutional provision over what it would be were the word "taken" alone used and the word "property" given its broad meaning, as given to it in the New Hampshire cases, supra, and that the including of such words does not extend the right of recovery to include that for any injury for which damages could not have been recovered at common law.

[3] We must never lose sight of the fact that the question of negligence has nothing whatever to do with the question of right to recover damages, where such damages have resulted from the exercise of the power of eminent domain. The delegating to a person or corporation of the power of eminent domain can never, in any manner, absolve the person or corporation exercising such powers from liablity for any negligence on his or its part either

in the exercise of such power or in the carrying on of any enterprise after the exercise of such power, and any action for damages resulting from negligence can in no manner raise any question based upon the exercise of the power of eminent domain, whether such action be brought prior to an alleged exercise of the power or afterwards. The damages to be recompensed for under the law of eminent domain are, from the very necessity of things, only those flowing from injuries that cannot reasonably be avoided even by the use of due care in the exercise of the power of eminent domain, and are, ordinarily, only such as could be anticipated by a jury in the trial of an action brought before the "damage" had taken place. In the case at bar there is no plea of negligence. Therefore no question of negligence on the part of defendants is before us, and we must presume that defendants acted with all due care in everything pertaining to the matters complained of.

[4] Not only is the question of negligence entirely foreign to the law of eminent domain, but the laws pertaining to private nuisances and to damages flowing therefrom are in no manner affected by the question of eminent domain. It seems inconceivable that it could ever be claimed that, when the state delegates to a private person or corporation the right to take or damage property under the law of eminent domain, it does more than to declare that lawful which otherwise would be unlawful, perchance render that not a public nuisance which otherwise would be one, leaving he or it, in so far as the taking or damaging of property may infringe upon the superior rights of the owners, liable to compensate for all damages flowing from the injury suffered; yet it is stated by some courts that, by giving to a corporation the right of eminent domain for the purpose of carrying on some enterprise, such enterprise cannot be held to be a private nuisance. This is clearly wrong. Any enterprise which would be a private nuisance when separated from the power of eminent domain will be exactly the same private nuisance if conducted by a person vested with the right to exercise such power of eminent domain. To illustrate: An abattoir, when located near a dwelling house, must be conceded to be a private nuisance. If by statute a party

be given the right to condemn and take or damage property to use as the site for an abattoir, such abattoir properly conducted would not be a public nuisance, yet, if located in a residence district, it would be a private nuisance, and any party injured thereby could recover damage for such private injury, and, under the Constitution, the taking of property for such abattoir and the erection thereof could be restrained until compensation for the taking and damaging were paid, which compensation, so far as compensation for the "damaging" of property was concerned, would be limited to the amount of injury which the owner of the property would suffer from the carrying on of the enterprise with due care. The payment of such damages would absolve him from further liability only so long as he should run his plant with due care. It is undoubtedly true that it very seldom happens that any statute ever authorizes, under the power of eminent domain, the doing of that which is of necessity a nuisance per se regardless of its situs; therefore seldom any question of nuisance necessarily arises from the exercise of the power of eminent domain, and such question ordinarily arises only when an enterprise, not necessarily a nuisance, is, under the power of eminent domain, located where, owing to its proximity to some particular property, it becomes a nuisance as to such property.

[5] It must be conceded, and the authorities universally so hold, that a railroad, when properly operated, is not ordinarily a nuisance, and that it can only become a private nuisance when improperly or negligently operated, a question not before us in this case, or when, though properly operated, yet, owing to its peculiar location, it infringes upon some right which an individual has separate and distinct from the rights of the public in general. Railroads are absolute necessities. At the present day the very existence of a city often depends upon them. Their work is such that it is necessary for them to get as close to the centers of business as possible, not only for their own welfare, but for the public good. One who buys land in a city usually hopes that its railroad facilities will increase, thus causing the city to grow and his land to enhance in value. This hope is usually in the breast of every person who has chosen city in preference to country life.

Connected - with its advantages comes its disadvantges. One may be called upon to part with his property for the public benefit. Streets used by him may be closed. He may reside in the vicinity of the right of way and be disturbed by the noise of moving trains, and by the contamination of the air caused by the smoke and gasses therefrom; but these are but things which must necessarily be borne in exchange for the benefits. Of course, if the trains are negligently run, a railway may become both a private and a public nuisance and holden as such. A railway company may so locate its roundhouse that it may become a nuisance to the adjoining property holders, but the question of nuisance will depend, not only upon the location of the roundhouse, but frequently upon the question of negligence in its conduct, and often upon the nature of the adjoining property. A railroad must respond in damages if it cuts off one's access to his property in any direction, but it does not necessarily follow that it cannot destroy a privilege of traveling certain streets distant from the property of such party. A railroad cannot dump cinders upon the land of another thus injuring it, nor can it allow its engine to blow steam across the land of others. It follows that a railway must condemn sufficient land so that steam from its engines and cinders from its furnaces will not cause physical injuries to persons or property off the right of way.

[6] What, then is included in the word "damaged" as it is used in the above-quoted section of our Constitution? In the use of the terms "damage" or "damaged," as we have used them herein, we have had in mind only legal damage, and certainly it was in that sense that the word "damaged" was used in the Constitution and in our various statutes. Those Constitutions which use the term "or injured" where ours uses the term "or damaged" are more exact in the use of language. One thing that has often led to confusion is in not distinguishing clearly between "injury" and "damage," and in the careless use of the one term where the other should have been used. A person cannot be injured unless he has been wronged, and he cannot be wronged unless some right is infringed. Legal damage is the loss or detriment caused by the injury—the wrong—the infringement of some right vested in one.

Moreover, one is not wronged, though he may have suffered damages, unless he has suffered the infringement of some right vested in him which right is superior to the right vested in the party causing the damage, upon which right such other party defends against the consequence of his own acts. It therefore follows that, if a person desiring to enjoy the property of which he may be possessed makes a use of the subject thereof, which use is, under all the surrounding circumstances, a reasonable use thereof not infringing in any manner upon any superior rights of another, he cannot, by such use, have wronged any other party, and cannot be holden for any damages suffered by any other person, though such damages flowed from such exercise of his right of property. I may be a merchant and have a lucrative business established. Another party may start a business, and by fair competition destroy my business, yet I cannot recover the damage suffered because I have suffered no legal injury. A party may have had a ferry across the river at Pierre, and have been earning good returns therefrom prior to the time when the bridge was built across the river. The building of the bridge may have destroyed the business of the ferryman, but he cannot recover from the bridge company for the injuries suffered. A man may have a low building with windows on all sides. The owners of adjacent land may erect skyscrapers on three sides, cutting off largely the light and air before enjoyed, and the building may be practically ruined in value, yet there is no right of action to recover the damage, as there has been no wrong—no legal injury has been inflicted. A person may erect a factory on the lot adjoining one's residence, and, while the operation of such factory may not be a nuisance, yet the fact that there is a factory there may destroy the value of the residence as such. There is no redress, as there is no wrong to redress, though the damage may be great in dollars and cents. Mohawk Bridge Co. v. Utica, etc., 6 Paige (N. Y.) 555; Bordentown, etc., v. Camden, etc., 17 N. J. Law, 314.

So in the case at bar, conceding that the plaintiff has been damaged in the sum of $15,000, the question is: "Does it appear from the allegations of the complaint that such damages flow from an infringement of a superior right vested in plaintiff, from what.

under the surrounding circumstances, was an unreasonable use by defendants of their property, from a legal injury, or do they flow from acts on the part of defendants, which in no manner constitute a wrong—a legal injury—to plaintiff. Must one to whom is given the power to take or damage property under the right of eminent domain respond for damages of a kind other than those any other person would be liable for? If the power of eminent domain was not given to a railway company and such a company should acquire property by purchase and should operate a railway thereon, operating it in a manner not rendering it a nuisance to the adjoining property, should the owners of such adjoining property have any greater or less right to recover damage because of the lack of power of eminent domain? Can the other party be more wronged in the one case than in the other? Certainly a railway company is in no worse position, so far as its duty to respond for damages inflicted upon others is concerned, because to it is given the power of eminent domain, and it obtains its right of way through the exercise of such power. The power of eminent domain, vested in a private person or corporation, in no manner lessens or increases it rights and liabilities in regard to payment of damages suffered by another through the exercise of such power from what they would be if it took or damaged property without the exercise of such power, except that, for the taking or damaging, it may be required to respond before it does the taking or damaging.

In its last analysis, the question of whether there is an infringement of a private right giving rise to an action to recover for "damaging" property resolves itself into the one question: Did the party complained of so conduct its own business, as, under the circusmstances, to constitute the exercise of its property rights a reasonable exercise thereof, and thus comply with the maxim, "Sic utere tuo ut alienum non lædas"? In determining this—in fact, the sole question before us in this case—we may discard as absolutely immaterial the existance of the power of eminent domain. Considering now the allegations of the complaint, we find the alleged sources of damage divisible into two classes: (1) Those resulting from the operation of the trains; (2) those re-

sulting from the closing of two streets. We will consider the two separately.

[7] There being no allegation of negligence on the part of the defendants in the management of their trains, and the location and operation of a railroad not being a nuisance per se, it cannot be presumed that the conditions and circumstances surrounding the establishment and operation of defendants' business were such that such establishment and operation were an unreasonable use of defendants' property and property rights, and thus converted into a nuisance what otherwise would not be one. Neither does the mere allegation that plaintiff has suffered damage suffice, as such damage may have resulted from a use by defendants of their property and property rights which use was perfectly reasonable. Let it not be inferred that we hold that there could be no liability on the part of defendants. We have already mentioned some unreasonable uses of railroad property and unreasonable management thereof, and we fully agree with the decision of the court in B. & P. R. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739, cited by defendants; but the allegations in the case at bar wholly fail to set forth facts bringing this case in analogy with the facts in that case. Plaintiff would have the right to erect upon his land, as would also those of whom defendants purchased their right of way, a factory which, even if properly managed, might produce smoke, noise, and a trembling of the earth annoying to the occupants of adjoining property and destructive of the value thereof, anl yet the operating of such factory might be, under the circumstances, a perfectly reasonable use of property and rights therein. The nearest approach to an allegation sufficient to show an unreasonable use by defendants of their property rights is the allegation as to the "trembling of the earth occasioned by the operation of the trains." There is absolutely nothing to show that such "trembling" was of a nature or degree to be dangerous to any structure that had been or might be erected upon plaintiff's land. There should be sufficient to show that the "trembling" is such that works an injury to plaintiff by injuring his property. Any

other "trembling" must be classed with noise and smoke resulting from a reasonable use of property.

[8] As regards the closing of the streets, it matters not how they were closed, whether by location of depot and roundhouse thereon, or in some other manner. They were closed, and the damage, if any flowing from such closing, would be the same, regardless of how or by whom closed. The authorities are in hopeless conflict upon the question of a railroad's liability for closing a street, where the part of street closed does not abut upon the land owned by the party claiming to be damaged. The great weight of authority seems to be that there is no liability in such a case. It will be found that many of the courts so holding base their decisions upon the wording of the constitutional provisions of the particular state. In that we think they err, as we believe, as hereinbefore stated, that the right to recover damages resulting from an exercise of the power of eminent domain is not based upon the Constitution, though it may be limited thereby.

While a railway company has the implied right, under the power of eminent domain, to cross a public highway with its right of way, and thus impose a further public use upon that part of the highway—a use that must necessarily interfere to some extent with its use for other highway purposes—there is no such implied right to vacate and close any part of a highway upon the pretext that it is needed for railway purposes, and any such closing would constitute a public nuisance, and be punishable as such.

It follows that we must presume, there being no allegation to the contrary, that the defendants did not commit a criminal offense. and that the parts of the streets closed had been vacated by the duly qualified municipal body of the city of Aberdeen.

[9] We note this fact for the reason that, in at least one case, it has been intimated there might be a claim for damages against a railway company if the street had not been duly vacated where there would be none if it had been vacated at the request of the railway company. Harrington v. Iowa Cent. R. Co., 126 Iowa, 388, 102 N. W. 139. But we think a holding to that effect would be error. If a private right, as distinguished from a public right is impaired, it is immaterial, so far as the question

of private damage is concerned, whether the injury, if any, was inflicted under a rightful exercise of the power of eminent domain, thus eliminating the question of public nuisance, or whether the injury came through the wrongful act of the other party, nor is it material whether the injury was inflicted to further a public purpose or to further a private purpose. Thus it is immaterial in this case in determining the actionable nature of the damage whether the damage was inflicted by the closing of the streets by the city at request of defendants, as in case of Dantzer v. Indianapolis Union R. Co., 141 Ind. 604, 39 N. E. 223, 34 L. R. A. 769, 50 Am. St. Rep. 343, or whether the closing was by the city Let us suppose the two streets in question had been duly vacated by the proper authorities prior to defendant's advent into the city of Aberdeen, and with that the situation defendants had acquired these parts of the former streets; would their keeping the same closed in any manner increase the damage that plaintiff would have already suffered from the closing of the streets? Certainly not. It follows, then, that the damages recoverable for the closing of these streets is none other or greater than the city of Aberdeen itself would be liable for upon their vacation, if vacated through proper action upon the part of such city.

[10] What rights has one in and to the use of streets? He has, whether an owner of the land or not, whether a citizen or a stranger, the right, in common with the rest of the public, to travel all of the public highways, which right may be of great convenience to him so far as certain highways or parts thereof are concerned, but of no convenience whatsoever so far as other highways are concerned. This is a right not in any manner connected with the ownership of land or other subject of property, and cannot be held to be, in any sense, a private property in the highways.

[11] He has the right, as the owner of land, to access to such land and to every part thereof where it abuts upon a highway. This is a right resting upon the ownership of the subject of property and connected with and appurtenant to such subject of property, and is, therefore, a property right. It is a special private right entirely distinct from the public right, and is one

that pertains, not only to the part of the highway abutting the owner's land, but extends sufficiently beyond his own premises as to insure him reasonable facilities for connection with those highways in which he has no special rights. Further than this his property rights do not extend, and therefore any interference with a highway beyond the point where one's special rights eno is not a "taking or damaging" of property, and is not the infringement of any right giving rise to action for damages.

The learned author of Elliott on Roads (3d Ed.), at section 1180, says: "The right which an abutter enjoys as one of the public and in common with other citizens is not property in such a sense as to entitle him to compensation on the discontinuance of the road or street; but with respect to the right which he has in the highway as a means of enjoying the free and convenient use of his abutting property it is radically different, for this right is a special one. If this special right is of value—and it is of value if it increases the worth of his abutting premises—then it is property, no matter whether it be of great or small value." And at section 1181 further says: "Owners of lands abutting upon neighboring streets, or upon other parts of the same street, at least when beyond the next cross-street, are not, however, entitled to damages, notwithstanding the value of their lands may be lessened by its vacation or discontinuance." One of the leading cases upon this question is that of Smith v. Boston, 7 Cush. (Mass.) 254, wherein the opinion was written by Chief Justice Shaw. What he said therein seems peculiarly applicable to the facts alleged in the complaint herein: "The inconvenience of the petitioner is experienced by him in common with all the rest of the members of the community. He may feel it more, in consequence of the proximity of his lots and buildings; still it is a damage of like kind, and not in its nature peculiar or specific. The creation of a public nuisance, by placing an obstruction in a highway, can only be punished and suppressed by a public prosecution; and though a man, who lives near it, and has occasion to pass it daily, suffers a damage altogether greater than one who lives at a distance, he can have no private action, because in its nature it is common and public. But if he suffers a peculiar and

special damage, not common to the public—as by driving upon such an obstruction in the night, and injuring his horse—he may have his private action against the party who placed it there. The damage complained of in this case, though it may be greater in degree, in consequence of the proximity of the petitioner's estates, does not differ in kind from that of any other members of the community who would have had occasion more or less frequently to pass over the discontinued highway. The petitioner has free access to all his lots by public streets. The burden of his complaint, therefore, is that in going to some of his houses in some directions he may be obliged to go somewhat further than he otherwise would. So must the inhabitant of the south end of the city, or the citizens of other towns, with their teams or carriages, who would have had a right to use the discontinued way. Upon the question of public convenience, it is the province of the mayor and alderman upon a balance of all considerations bearing upon it to decide. It is not to be presumed that they will discontinue a highway once laid out, unless the considerations in favor of the discontinuance decidedly preponderate." This subject is most fully treated in the case of Dantzer v. Indianapolis Union R. Co., supra, in which will be found a review of many other cases. We would also cite Davis v. Hampshire Co., 153 Mass. 218, 26 N. E. 848, 11 L. R. A. 750; Cram v. Laconia, 71 N. H. 41, 51 Atl. 635, 57 L. R. A. 282; Long v. Wilson, 119 Iowa, 267, 93 N. W. 282, 60 L. R. A. 720, 97 Am. St. Rep. 315; Obrien v. Iron, etc., Co., 158 Ind. 218, 63 N. E. 302, 57 L. R. A. 508, 92 Am. St. Rep. 305; Borghart v. Cedar Rapids, 126 Iowa, 313, 101 N. W. 1120, 68 L. R. A. 706; Aldrich v. Metropolitan West Side Elevated R. Co., 195 Ill. 456, 63 N. E. 155, 57 L. R. A. 237.

The latter case, decided in 1902, seems to be a leading case upon the subject and directly in point in the case at bar. It appears from the statement of facts in that case that in 1888 the plaintiff owned two lots fronting on Ashland boulevard, in Chicago, and erected theron an expensive apartment building. In 1892 the defendant obtained, by purchase and condemnation proceedings, a right of way through the same block, and located and constructed on said right of way, north of said premises, an

elevated electric railway, and that since 1895 it has run its cars on said railway, propelled by electricity, crossing Ashland boulevard 31 feet north of plaintiff's building. To recover damages to her property caused by the construction and operation of defendant's road the plaintiff brought this action. On the trial in the court below the court struck out all of the plaintiff's evidence, and directed a verdict for the defendant. The learned Supreme Court of Illinois, on appeal, affirmed the judgment of the court below, and held as appears by the headnotes of the case as follows: "Under the constitutional provision against damaging private property for public use without just compensation, no recovery can be had unless there has been some direct physical disturbance of a right which the plaintiff enjoys in connection with his property and which gives it an additional value, and by reason of such disturbance the plaintiff has sustained a special damage in excess of that sustained by the public generally. * * * If an elevated railroad, occupying its own land or right of way except where it crosses public streets, is carefully constructed and operated no recovery, under the constitutional provision aginst damaging private property for public use, can be had by the owner of property located near the tracks because of the usual noise, vibration, intereference with light, air, and view necessarily attendant upon the proper operation of the railroad and suffered by such owner in common with the public generally." The court in its opinion says: "There was no charge or proof that the road was negligently constructed or operated, but only that, by the construction and operation of the road so near to appellant's property and across the public street there her property was damaged for public use, within the meaning of the Constitution, for which no compensation has been made, and for which she is entitled to recover. The road was located and  constructed by the company in accordance with lawful authority and upon its own land or right of way, and not in any public street or alley, except where it crosses streets or alleys by authority lawfully granted. For the purposes of this case it must be assumed, from the record, that it was carefully constructed and carefully operated, and that by such construction and operation it

did not injuriously affect the property of others, or the property in question of the plaintiff, any more than any such property would be affected in any case by the construction and operation of such road so near to such property. Ashland boulevard, running north and south in front of plaintiff's property, was 100 feet wide, and had been paved and beautified as a residence street. * * * The record shows that no unusual noise or vibration of plaintiff's property was caused by the company in the matter complained of. Access to her property from any public street was not cut off or injurious affected. In short, whatever damages were sustained by the plaintiff were such, and only such, as were common to the public generally. In Rigney v. City of Chicago, 102 Ill. 64, this court allowed a recovery against the city for damages to the plaintiff's property caused by the construction of a viaduct on the ground that it cut off access from the public street to plaintiff's property. Here there has been no direct disturbance of any right, public or private, which the plaintiff enjoys in connection with her property, and which gives to it an additional value, whereby she has sustained a special damage in excess of that sustained by the public generally. The damages sued for are of the same kind and character as those sustained by the public generally in the ownership of property, which property may have been lessened in value by the construction and operation of the road. Noise, the obstruction of light and view, are necessary incidents of the construction and operation of such roads, and, if every property owner could recover in all such cases, the making of public improvements would become practically impossible."

The case of Searle v. City of Lead, 10 S. D. 312, 73 N. W. 101, 39 L. R. A. 345, is referred to and relied upon by the appellant as sustaining his contention in the case at bar, but, upon examination of that case, it will be found to come within the rule laid down in Rigney v. City of Chicago, supra, and that it has no application to the case at bar. In that case it will be noticed from an examination of the facts stated in the opinion the city was threatening to raise the grade of the street 3½ feet in front of plaintiff's property, and that the raising of the grade would necessarily physically interfere with the plaintiff's easement or

right of ingress and egree to and from her property and either compel her to live below the new grade with a stairway or require her to incur the expense of raising her building to the grade. The city, therefore, threatened a direct physical injury to plaintiff's property not common to all the property owners of that vicinity. In the case at bar, however, there is no allegation that the plaintiff's property was taken or any easement or appurtenance thereto interfered with, or that the plaintiff had suffered any damage or injury not common to all the residents of that part of the city. Possibly the depreciation in plaintiff's property might have been greater in degree than that of other owners of property in the vicinity, but it was of the same nature, and did not physically interfere with any right, easement, or appurtenance belonging to plaintiff's property. It is clear, therefore, that in no view of the case were the facts stated by the plaintiff in his complaint sufficient to authorize a judgment in his favor. The facts upon which this action is based were before this court in the case of Hyde v. Railway Co., 24 S. D. 386, 123 N. W. 849.

The judgment of the trial court is affirmed.

CORSON, J., concurs specially.

HANEY, J. (dissenting). The only question properly presented by this appeal is whether, upon the allegations of the complaint, "liberally construed, with a view of substantial justice between the parties," the plaintiff is entitled to any relief. As I read the complaint, it discloses that the defendant, the Minnesota, Dakota & Pacific Railway Company, a domestic corporation, constructed a railroad into and through certain described portions of the city of Aberdeen adjacent to lots then and now owned by the plaintiff; that by reason of the construction and operation of such railroad the plaintiff's property was and has been rendered "practically valueless"; that the plaintiff has received no compensation for the damage thus caused; and that no proceeding has been heretofore instituted to ascertain the amount of such damage. So it is admitted that the plaintiff's property was and has been rendered "practically valueless" by the construction and operation of the defendants' railroad. In other words, it was and has been

substantially damaged by the construction and operation of the railroad. If it should be inferred that all the damage or injury has been caused by the operation of the railroad, I might concede that the complaint fails to state a cause of action, but the alleged causes of injury include construction, and, if the mere construction of this railroad, though constructed in an ordinary and proper manner, substantially depreciated the value of plaintiff's property, he is, I think, entitled to compensation. One whose property is "damaged," though none of it be "taken," is entitled to compensation. State Const. art. 6, § 13. Searle v. City of Lead, 10 S. D. 312, 73 N. W. 101, 39 L. R. A. 345. This action should be governed by the same rules that would have governed a proceeding by the railway company to have the amount of the plaintiff's damage ascertained. In such a proceeding the measure of recovery should be the depreciation, if any, in the fair market value of the property, caused by the construction of the railroad. In such a proceeding, and in the case at bar the damage is the difference, if any, in the value of the property before and after construction. Osgood v. City of Chicago, 154 Ill. 194, 41 N. E. 40. As I construe the complaint, it shows that there was a substantial depreciation in the value of the plaintiff's property, caused by the construction of the defendants' railroad. Therefore, I think, the defendants' objection to the introduction of any evidence should have been overruled and the cause submitted, if the evidence would warrant it, under instruction defining the grounds and measure of the plaintiff's recovery as indicated. The determination of what should be considered in estimating the value of property before and after construction of a railroad in this class of cases, depending upon the facts of each particular case, might better, it seems to me, be deferred until required by an appeal involving rulings relating to the admission or rejection of evidence. These, in brief, are my reasons for thinking that the judgment of the circuit court should be reversed.