KERN, Justice
(dissenting).
[¶ 28.] I respectfully dissent. I would reverse and remand for an evidentiary hearing so the record can be more fully developed and the test recently articulated in State v. Miller & Walsh, 2016 S.D. 88, ¶ 44, 889 N.W.2d 141, 156 applied.
[¶ 29'.] Before ’ the State’s project, Schliem had two access points to and from his property. One was from the south on Wayland Avenue — “a seventeen-foot-wide dirt road that is sometimes impassable.” The other was from the west on Cliff Avenue. The only street abutting Schliem’s property, 63rd Street, ended in a dead end east of his property. The development to the east of Schliem’s property is predominately industrial. The development to the west is predominately commercial.
[¶ 30.] As part of its project, the State closed the Cliff Avenue access. The State opened the dead end on 63rd Street to the east of Schliem’s property and extended it to intersect with National Avenue and Gul-by Avenue. In essence, the State’s action reversed the orientation of Schliem’s property where what used to be the front with prime commercial access is now the back without any access — and the front is now accessed by driving through an industrial park.[19]
[¶ 31.] During the summary-judgment proceedings, Schliem maintained that the replacement access provided by the State was unreasonable. He offered three property appraisals into the record. The appraisals showed that before the State closed the Cliff Avenue access, the highest and best use of Schliem’s property was commercial development. However, after the State closed the Cliff Avenue access and opened the new access point to the east, the highest and best use of his property changed from commercial use to industrial.
*232 [¶32.] The State failed to refute this evidence. Instead, one week before the summary-judgment hearing, the State submitted an affidavit stating that, “[i]f the [c]ourt agrees with [Schliem] that the proper test for compensability is whether [he] lost reasonable access ... then the State asks for a continuance to permit the State to obtain additional evidence on this subject.” The State maintained that it needed to gather evidence “necessary to establish that the intersection of Cliff Avenue and 63rd Street would not provide reasonable commercial access to [Schliem’s] property.” A continuance was not granted, and the summary-judgment hearing was held as scheduled. At the summary-judgment hearing, the State urged the court not to consider the reasonableness of the remaining access and to only look to whether the injury was peculiar to the land and not the kind of injury suffered by the general public.[20] The State also asked to submit additional evidence if the court considered the reasonableness of Schliem’s remaining access.[21]
[¶ 38.] Following the summary-judgment hearing, the circuit court issued a letter decision concluding Schliem’s access had not been substantially impaired.[22] The. circuit court did not include an analysis of the factors it considered to reach this conclusion,[23] nor did it have the benefit of the guidance provided by this Court in Miller & Walsh. Remand is necessary in this case because the circuit court lacked an adequate factual basis to fully consider and balance the unique facts of this case.
[¶ 34.] It is well settled that “a special private right ... pertains, not only to the part of the highway abutting the owner’s land, but extends sufficiently beyond his own premises as to insure him reasonable facilities for connection with those highways in which he has no special rights.” Hyde, 29 S.D. 220, 238-39, 136 N.W. at 99. The taking or damaging of this right occurs when the State substantially impairs á landowner’s access. Miller & Walsh, 2016 S.D. 88, ¶ 43, 889 N.W.2d at 154.
[¶35.] “The determination whether a substantial impairment occurred requires a court to consider the unique fact pattern in each case.” Id. ¶ 44. Factors that the court may consider include “the nature of the property involved, the character of the access before and after governmental activity, and the location (rural or urban).” *233 Id. Moreover, even where normal access remains available, the court may consider whether the “access for which the property was specifically intended [has been] rendered [unreasonably] deficient.” Id. (quoting State v. Dawmar Partners, Ltd., 267 S.W.3d 875, 879 (Tex.2008)). In this particular case, the State did not physically take any of Schliem’s land. Therefore, Schliem must also demonstrate that -the alleged injury he suffered is peculiar to his land and not the kind , suffered by the public in general. Bloom, 77 S.D. at 461, 93 N.W.2d at 577.
[¶ 36.] This Court has continually held that “[t]he difference between ‘mere circuity of travel’ and unsuitable access is one of degree, and is directly related to the unique fact pattern in every case.” Miller & Walsh, 2016 S.D. 88, ¶43 n.3, 889 N.W.2d at 154 n.3 (quoting 8A Rohan & Reskin, supra ¶ 16,. § G16.03 [2][a] ).[24] The majority concludes that Schliem’s “access routes before and after the Intersection’s closure are nearly identical,” supra ¶ 18, and focuses on circuity of travel. In doing so, it fails to adequately consider and balance Schliem’s evidence. Further, it attempts to balance the parties’ relative rights and interests on an- incomplete record. .
[¶ 37.] Schliem alleged that his remaining access was unreasonable and that the highest and best use of his property changed from commercial to industrial.- 1 In Hurley,' this Court considered a property’s highest and best use when ..determining whether a substantial impairment occurred.[25] 82 S.D. at 163-64, 143 N.W.2d at 726. Other jurisdictions also recognize highest and best use of a property as a factor to consider in determining whether *234 access rights have been substantially impaired. 8A Rohan & Reskin, supra ¶ 16, § G16.03[2][a] (“Some courts hold that the issue of reasonable remaining access can only be determined with reference to the highest and- best use of the property.”). In'New York, it is well settled that “[suitability of access is not to be determined in the abstract, but in relation to the need for access inherent in the highest and best use of the property.” E.g., Chemung Canal Tr. Co. v. State, 90 A.D.2d 889, 456 N.Y.S.2d 518, 519 (N.Y.App.Div.1982). Other courts have rejected this notion. See Dawmar, 267 S.W.3d at 879 (“We have implicitly rejected the proposition that the degree of impairment of access must be evaluated in light of a property’s highest and best use”). Regardless, it is implicit from the language used by this Court in Hurley that it endorsed consideration of the highest and best use of the property as a factor when determining whether a substantial impairment of access occurred. See supra n. 25.
[¶ 38.] Ordinarily, on review, this Court considers the unique fact pattern of the case and then ascertains the degree of the alleged impairment. However, because there was inadequate evidence presented to the circuit court on the reasonableness of Schliem’s remaining access, a fully balanced consideration cannot be made and prevents a determination of whether Schliem’s access rights were substantially impaired.
[¶ 39.] In addition to having an incomplete record, the circuit court decided this case before our decision in Miller & Walsh. In that case, we reversed and remanded and articulated specific factors that the court should use when determining whether access rights- were substantially impaired. Those factors included “the nature of the property involved, the character of the access before and after governmental activity, and the location (rural or urban).” Miller & Walsh, 2016 S.D. 88, ¶ 44, 889 N.W.2d at 156. We also provided that the court must consider whether the “access for which the property was specifically intended [has been] rendered [unreasonably] deficient.” Id. It is unclear precisely what factors the circuit court used when it concluded that Schliem’s access rights were not substantially impaired, but it certainly did not have the benefit of this Court’s guidance when this case was decided.
[¶ 40.] Based on the arguments and admissions of the parties, there was some confusion as to what test applied in this case. See Hall, 2006 S.D. 24, ¶20, 712 N.W.2d at 30 (“Undoubtedly, the trial court’s analysis was hindered by the parties’- failure to thoroughly address the issues or offer sufficient evidence.”). The State argued that the court should disregard the reasonableness of Schliem’s remaining access — even though that is a factor in determining whether his access rights were substantially impaired. Schliem focused on the devaluation of his property. And while the circuit court articulated the correct test, there was also confusion on the part of the court when it found that Schliem did not have a property right but then went on to conclude that Schliem’s. right of access was not substantially impaired.
[¶41.] All in all, this was a rush to summary judgment.[26]- The circuit court *235 and this Court were not presented with adequate evidence to determine whether the State substantially impaired Schliem’s access. I would reverse and remand for an evidentiary hearing to more fully develop the record and to apply the test articulated in Miller & Walsh. If the circuit court concludes that Schliem’s access rights were substantially impaired, it must then determine whether that impairment was peculiar to his land.

. Those wishing to access Schliem’s property from Cliff Avenue before the State’s project turned east onto 63rd Street and traveled approximately 748 feet. After the project, those accessing Schliem’s property from Cliff Avenue will travel 3,050 feet farther — through an industrial park.

, The State argued that “the test for reasonable access applies [only] to landowners who abut a street where their access ha[d] beeii changed.” Because Schliem's property did not abut the access closure on Cliff Avenue, the State maintained that the court must only consider whether Schliem could show a special injury. The state submitted, "So it’s this special injury test that applies in this case, not a, reasonableness standard.”

. The State urged, ”[I]f the [c]ourt decides that you agree with them and that diese old cases justify them claiming damages in inverse condemnation as a result of die closure of the intersection, if you think that’s die right test, that it’s a reasonableness test instead of a special injury test that we urged, if you think that’s the correct test, then we’d like the opportunity to submit additional evidence ... to prove that that intersection was not a good place for commercial access for these lots to the east, and in addition, we’d like the opportunity to prove that they didn't suffer, the damages that they claim.” Additional evidence was not submitted to'the circuit court.

. The circuit court did not make a determination regarding whether Schliem’s alleged injury was peculiar to his land and not the land suffered by the public in general.

. While findings of fact and conclusions of law are “unnecessary” in summary judgment cases, see SDCL 15-6-52(a), a reasoned analysis to support the conclusion that a substantial impairment did or did not occur in light of the unique facts of the case is warranted due to the fact-intensive nature of inverse-condemnation cases.

. See also Darnall, 79 S.D. at 70, 108 N.W.2d at 207 ("[W]here there is no physical taking and the owner’s access to the highway on which, he abuts is not unreasonably diminished or interfered with, his loss is .due to the diversion of traffic, a lawful exercise of the police power and there can be no recovery."); Hurley, 82 S.D. at 163, 143 N.W.2d at 726 ("In each case, therefore, the relative rights of the public and private interests must be considered and the reasonableness of the regulation and the degree of its interference with private property determined. If, after the construction of a public improvement an abutting landowner continues to have reasonable access to his property, he has no com-pensable complaint. But if the right of access is destroyed or materially impaired, the damages are compensable if the injury sustained is peculiar to the owner’s land and not of a kind suffered by the public generally.”); Hall, 2006 S.D. 24, ¶ 18, 712 N.W.2d at 29 ("[A] landowner’s right of access and the state’s police power to regulate highways often conflict. This conflict clearly manifests when the .state eliminates an abutting landowner’s highway access ..., the relationship between the rights of the property owner and the rights of the state must be considered in light of the facts of each case.").

. Although Hurley involved an abutting landowner, this case is no different, Abutting and nonabutting landowners may have differing property rights. However, the change in highest and best use in Hurley went toward determining whether the property right had been substantially impaired — not whether there was an initial property right. - '
Before the construction of Interstate 90 free, open, and unobstructed access was available, from the property to both Omaha Street on the south and West Boulevard on the east. Its highest, best and most profitable use was for an automobile service station and one of the major considerations contributing to its value for such purpose was the right of access to two streets. Negotiations with major oil companies were in progress when the state erected the steel barrier closing all access to. the property from West Boulevard and. for a limited distance on Omaha Street. The barrier left access only to the west-bound traffic on Omaha Street. Likewise, all pedestrian traffic was closed off from the east and from the south. Consequently, the Referee correctly, concluded plaintiffs’ right of access was substantially impaired and they suffered a compensable loss.
Hurley, 82 S.D. at 163-64, 143 N.W.2d at 726.

. The majority suggests that there are no genuine issues of material fact in dispute and that Schliem, in filing his own motion for summary judgment, "necessarily represented to the court that the material facts of this case were undisputed.” Supra ¶ 11. However, we have held that cross-motions for summary judgment do "not mean that there are no genuine issues, obliging a court to grant judgment for one side or the other. Both motions *235 must be denied if the court detects genuine issues of fact or genuine issues regarding the inferences to be drawn from the facts.” St. Paul Fire & Marine Ins. Co. v. Engelmann, 2002 S.D. 8, ¶ 15, 639 N.W.2d 192, 199. Here, there were inferences to be drawn from the facts necessary to make a determination on substantial impairment. Moreover, Hall came to this Court on cross-motions for summary judgment; yet we still reversed and remanded because the parties disagreed on the purpose of the State’s action. Hall, 2006 S.D. 24, ¶ 21, 712 N.W.2d at 30. In this case, the parties disagreed on the reasonableness of the remaining access — a factor which the circuit court must consider before deciding whether Schliem's access had been substantially impaired.